IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **DONNA D. PAGE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **CIVIL ACTION NO. CV-06-BE-4812-NE** |
| | ) |
| **MICHAEL J. ASTRUE** | ) |
| **Commissioner of the Social,** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

**I. Introduction**

    The claimant, Donna Denise Page, filed applications for Disability Insurance benefits and Supplemental Security Income payments on October 15, 2004, alleging disability commencing on October 8, 2004 due to fibromyalgia and irritable bowel syndrome. The Commissioner denied the claims. The claimant filed a timely request for a hearing before an Administrative Law Judge. The ALJ held a hearing on November 1, 2005. In a decision dated January 13, 2006, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act, and, therefore, was not eligible for Disability Insurance Benefits and Supplemental Security Income Payments. On November 9, 2006, the Appeals Council denied the claimant's request for review. The claimant has exhausted her administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, the decision of the Commissioner will be reversed and remanded.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)A), a person is entitled to disability benefits when the person cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.*"* *Walker*, 826

F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### III. Facts

The claimant was forty-two years old at the time of the administrative hearing and has a high school education. (R. 280). Her past work experience includes employment as a school cafeteria cook. (R. 22). According to the claimant, she became unable to work on October 4, 2004, because of pain in both of her legs, shoulders, and back. (R. 283). She is currently unemployed. (R. 282).

Dr. Blackburn, the claimant's treating rheumatologist, diagnosed her with fibromyalgia during her first visit on October 5, 2004. On October 13, 2004, Dr. Blackburn diagnosed the claimant as having an internal derangement of the right knee. (R. 162). The claimant visited Dr. Blackburn on November 16, 2004 and February 16, 2005 because of increased pain due to her fibromyalgia. (R. 160-61). Dr. Blackburn completed a "Fibromyalgia Residual Functional Capacity Questionnaire" on September 27, 2005. (R. 20). The form states *inter alia* that the claimant meets the American College of Rheumatology criteria for fibromyalgia, that she has

constant pain, and that she is unable to perform even "low-stress" jobs. (R. 210). Dr. Blackburn found that the claimant exhibited all eighteen of the fibromyalgia trigger points and experienced non-restorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, and irritable bowel syndrome. (R. 209). Dr. Blackburn determined that the claimant could sit or stand for no longer than ten minutes at a time, could only occasionally lift items weighing less than ten pounds and never lift items weighing more than twenty pounds, and would likely be absent from work more than four days per month. (R. 211-12).

The ALJ noted that the claimant was not performing substantial gainful work. (R. 19). The ALJ found that the claimant "has fibromyalgia, obesity, and a history of irritable bowel syndrome, which are considered to be 'severe' impairments under the Social Security Act and Regulations." (R. 21). However, the ALJ determined that none of these severe impairments met a listed impairment set forth in the Listing of Impairment, 20 C.F.R. pt. 404, subpart P, app. 1. (R. 21).

In assessing the claimant's residual functioning capacity, the ALJ stated that the medical records failed to document a sufficient objective basis for accepting the claimant's allegations of pain as wholly credible. The ALJ stated that he had considered the Eleventh Circuit's standard for assessing subjective complaints of pain. (R. 21). The standard requires "evidence of an underlying medical condition *and* either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). The ALJ found that the claimant met the first part of the standard, evidence of an underlying medical condition, but failed to meet the

second part. (R. 21).

The ALJ found that insufficient objective evidence existed to show that the claimant had "severe and chronic pain and limitation of function" that would "preclude the performance of all substantial gainful activity." (R. 21). The ALJ determined that Dr. Blackburn's assessment of the claimant's disability was not based on any objective evidence. The ALJ relied instead on a state agency Residual Functional Capacity Assessment ("RFCA") that had been completed eight months prior to Dr. Blackburn's residual functional capacity questionnaire to determine the claimant's residual functioning capacity. (R. 23). The person who completed the state agency RFCA was a non-physician agency employee. (R. 191).

Using the state agency RFCA, the ALJ concluded that the claimant had the residual functional capacity to engage in light work activities and could occasionally balance, kneel, crouch and crawl, and could frequently climb stairs and stoop. (R. 22). The ALJ found that the claimant must avoid concentrated exposure to cold and heat and moderate exposure to hazards. (R.22). Relying on his findings as to the claimant's residual functional capacity, the ALJ concluded that the claimant could not perform her past relevant work as a school cafeteria cook. (R.23).

The ALJ posed two hypothetical situations to the Vocational Expert ("VE"). The ALJ based his first hypothetical on the questionnaire that Dr. Blackburn completed and asked if an individual who could sit or stand for no more than ten minutes at a time and who could sit, stand, or walk for less than two hours in an eight-hour work day would be able to perform any jobs within the national economy. (R. 303) The VE testified that if the claimant had the residual functioning capacity as stated in Dr. Blackburn's questionnaire, she would be precluded from all

work activity. (R. 303). The ALJ based his second hypothetical on the state agency RFCA and asked if light jobs were available for an individual with the claimant's age, education, and past work experience who was able to perform a full range of light work with the limitations that she should avoid exposure to heat and cold, heights and dangerous machinery. (R. 303). The VE testified that based on the residual functioning capacity that the ALJ described the claimant would be able to perform work as a ticket marker, photocopy operator, and packager, which are jobs that exist in significant numbers in the national economy. (R. 303-04).

### IV.  Issues Presented

In this appeal, the claimant argues that the Commissioner erred in three ways. First, the claimant alleges that the ALJ failed to provide good cause for his rejection of the opinion of Ms. Page's treating rheumatologist, Dr. Blackburn. Second, the claimant asserts that the ALJ erred in failing to properly consider the effects of her symptoms of fibromyalgia, including pain, drowsiness, and impaired concentration, on her ability to work. Third, the claimant asserts that the ALJ's finding that she retains the residual functional capacity to perform the exertional demands of light work is not based on substantial evidence.

### V. Discussion

**A. Issue I**

The law in this circuit is well established that the Commissioner must accord the opinions of the treating physician with substantial or considerable weight. *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988). Absent a showing of *good cause* to the contrary, the commissioner cannot discount the treating physician's opinions. *Id.* "Good cause" is a fairly broad standard and the Eleventh Circuit has recognized its existence in at least three sets of circumstances. The first

circumstance exists where the opinion of the treating physician is accompanied by no objective medical evidence, is wholly conclusory, or is contradicted by the physician's own treatment notes. *Edwards v. Sullivan*, 937 F.2d 580, 583 (1991); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (2004). The second circumstance exists where the "treating physician's opinion was not bolstered by the evidence." *Phillips*, 357 F.3d at 1241. Finally, the ALJ can find good cause to discount the treating source opinion where the "evidence supported a contrary finding" from that of the treating source. *Id.*; *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("ALJ may reject any medical opinion if the evidence supports a contrary finding"); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

However, where medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the Commissioner cannot discount the treating doctor's opinion. *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1986). If the ALJ decides to discount the opinion of the treating physician, he must "clearly articulate" his reasons for doing so. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). The ALJ must make clear the weight accorded to each item of evidence and the reasons for the decision so that the reviewing court may determine whether the decision is based on substantial evidence. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The ALJ rejected Dr. Blackburn's assessment of the claimant's condition, and listed four reasons for doing so. First he stated that Dr. Blackburn's assessment was "obviously not based on any objective evidence." (R. 22). Second, he stated that Dr. Blackburn had not seen the claimant since February 16, 2005 and that the claimant missed appointments scheduled for June

8, 2005 and July 12, 2005. (R. 22).  Third, the ALJ thought that one or more persons completed the residual functioning capacity form from Dr. Blackburn.  (R.22).  Finally, the ALJ stated that he saw no medical evidence that supported Dr. Blackburn's requirement of a low-stress work environment.[1]  (R. 22).

With respect to the first reason for rejecting Dr. Blackburn's assessment of the claimant's condition, the ALJ failed to explain why he thought Dr. Blackburn's assessment was not based on any objective evidence.  Instead, the ALJ ignored the claimant's medical records.  Dr. Blackburn's treatment notes stated that Ms. Page had all eighteen of the fibromyalgia-displaying tender points, experienced non-restorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, and irritable bowel syndrome.  The ALJ cited no other evidence of record that was inconsistent with Dr. Blackburn's opinion except for the RFCA, which a *non-physician* agency employee completed on January 13, 2005—eight months prior to Dr. Blackburn's completion of the fibromyalgia-specific residual functioning capacity questionnaire.  (R. 160).  The RFCA stated that the claimant's allegations of disabling pain and fatigue were only partially credible.

The Eleventh Circuit has held that a report by a nonexamining physician that contradicts the report of the treating physician is not good cause for according little weight to the treating physician's opinion.  *Johns v. Bowen*, 821 F.2d 551, 554 (1987).  Moreover, "reports of reviewing, nonexamining physicians do not constitute substantial evidence on which to base an administrative decision." *Lamb v. Bowen*, 847 F.2d 698, 703 (1988).  Because the opinions of

---

[1] The questionnaire that Dr. Blackburn completed actually stated that the claimant would be *incapable* of low-stress jobs. (R. 210).

nonexamining *physicians* do not constitute substantial evidence for the basis of an administrative decision and do not constitute good cause for rejecting the treating physician's opinion, the assessment of an agency employee—*who is not a physician*—surely cannot be sufficient. The court also notes that the assessment of the claimant's treating physician occurred eight months *after* the agency RFCA and would, therefore, represent the most current assessment.

Secondly, as to the ALJ's statement that the claimant cancelled her June 8, 2005 appointment and failed to show for her July 12, 2005 appointment, the claimant testified that her financial condition was such that she had to apply for food stamps to buy groceries for herself—she could not financially afford to keep those two doctor's appointments. (R. 10, 298). In *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988), the Eleventh Circuit added a claimant's inability to afford prescribed medical treatment to the list of acceptable reasons for failing to follow prescribed medical treatment. *Id.* at 1213. Therefore, the claimant's financial condition was a valid excuse for missing the two appointments. Moreover, the ALJ incorrectly stated that Dr. Blackburn had not seen the claimant since February 16, 2005 because the claimant *did* keep an appointment for September 27, 2005. (R. 10). At this appointment, Dr. Blackburn filled out the residual functioning capacity questionnaire. (R. 10). When the ALJ posed a hypothetical based on the questionnaire, the VE testified that a person with such limitations would not be able to engage in any work activity. (R.302-03).

The ALJ's statement that Dr. Blackburn's fibromyalgia form was completed by two sources, one left-handed and one right-handed, does not provide good cause to reject the doctor's findings. No evidence exists—other than the direction of the checkmarks—that Dr. Blackburn did not himself complete the form. Though the ALJ may reach a different conclusion based on

the medical records, he cannot substitute his own opinion for that of the treating physician. *Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986). The ALJ concluded that the varied checkmarks meant that Dr. Blackburn only completed part of the form, yet other conclusions are just as likely. For example, Dr. Blackburn could have been using his right hand to examine the patient while using his left hand to check the appropriate boxes, or he could have dictated his findings for a nurse or assistant to record. This court will not engage in such speculation, and finds that the ALJ erred in doing so. Dr. Blackburn subsequently signed an affidavit stating that he completed the form in its entirety. While this affidavit was submitted in response to the ALJ's ruling and was not available to the ALJ at the time of his decision, it further highlights the speculative nature of the ALJ's conclusion.

Finally, Dr. Blackburn's extensive experience in the treatment of patients with fibromyalgia, his knowledge of the disease, and his diagnosis of the claimant support his statement that the claimant is incapable of performing low-stress jobs. (R. 220). Dr. Blackburn found that the claimant met the American College of Rheumatology criteria for fibromyalgia by exhibiting all eighteen of the fibromyalgia trigger points and experiencing non-restorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling and irritable bowel syndrome. (R.11). These symptoms provide medical evidence which supports Dr. Blackburn's assessment that the claimant is incapable of performing even low-stress jobs. (R. 210). Therefore, the ALJ erred as a matter of law in rejecting the assessment of the claimant's treating physician.

**B. Issues II and III**

Because the first issue on appeal is meritorious, the court does not need to address the

second issue and third issues. However, with respect to the third issue, it should be noted on remand that the ALJ's assessment that the claimant had the RFC to perform light work was not based on substantial evidence. Social Security Ruling 83-10 defines RFC as "a *medical assessment* of what an individual can do in a work setting. . ." SSR 83-10, 1983 WL 31251 (1983). Because the RFC is a medical assessment, the ALJ is precluded from making the assessment without expert medical testimony or other medical evidence to support his decision. *Id.* Here, the ALJ based his determination of the claimant's RFC on *non-medical* evidence. Therefore, the hypothetical posed to the VE based on the state agency RFC assessment was not based on medical evidence and should not be used as evidence on remand.

## V. Conclusion

For the above reasons, the court finds that the ALJ failed to show good cause for rejecting the opinions of the claimant's treating physician. Accordingly, substantial evidence does not support his decision. Therefore, the court will reverse the Commissioner's decision and will remand it for the ALJ to determine whether the claimant is entitled to Disability Insurance Benefits or Supplemental Security Income Payments.

A separate Order will be entered.

DONE and ORDERED this 28th day of March, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE